IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BARRY ROLAND MILLIMAN, )
)
Plaintiff, )
)
v. ) C.A. No. 16-1279-LPS-MPT
)
NANCY A. BERRYHILL, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
Defendant. )

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

This action arises from the denial of plaintiff's claim for Social Security benefits.

On December 26, 2013, plaintiff filed an application for Social Security Disability

Insurance Benefits under Title II of the Social Security Act.[1] In his initial application,

plaintiff alleged that he was disabled due to several impairments including brittle

diabetes impairment, reflex sympathetic dystrophy, coronary artery disease ("CAD"),

hypertension cardiovascular disease, asthma, vertigo, acid reflux, and hiatal hernia as

well as other digestive and cardiovascular disorders.[2] Plaintiff's application was initially

denied on April 3, 2014, and upon reconsideration on August 22, 2014.[3] Plaintiff then

requested a hearing before the Administrative Law Judge ("ALJ"), who issued an

unfavorable decision on June 24, 2016.[4] Plaintiff requested that the agency's appeal

---

[1] D.I. 6-2 at 33.
[2] D.I. 6-3 at 91-92.
[3] Id.
[4] Id. at 30.

council review the ALJ's decision on July 8, 2016.[5]  However, the Appeals Council

denied review on October 21, 2016.[6]  On December 20, 2016, plaintiff filed a timely

appeal with this court.[7]  Presently before the court are the parties' cross-motions for

summary judgment.  For the reasons that follow, the court recommends that

defendant's motion for summary judgment be granted.

## II.     BACKGROUND

Plaintiff was born on October 24, 1952.[8]  He has a high school education and

previously worked as a customer service coordinator and invoice control clerk.[9]  He

claimed that his disability onset date was November 15, 2013.[10]  After working for the

same company for almost 30 years, plaintiff was fired in November 2013.[11]  He then

visited multiple doctors who advised him to not seek new employment because of his

poor health.[12]  Following the advice of his doctors, since November 2013 plaintiff has

not returned to any form of work.[13]  To qualify for disability benefits, plaintiff must

demonstrate that he was disabled within the meaning of §§ 216(1), 223(d), and

1614(a)(3)(A) of the Act.

### A.     Evidence Presented

Plaintiff has experienced digestive, cardiovascular, and musculoskeletal issues

---

[5] D.I. 11 at 1.
[6] *Id.*
[7] D.I. 1-1.
[8] D.I. 6-2 at 54.
[9] *Id.* at 54-56.
[10] *Id.* at 33.
[11] *Id.* at 55-56.
[12] *Id.* at 58-59.
[13] *Id.* at 59.

since at least November 2013, although most of his conditions pre-date his alleged disability period. Plaintiff had multiple cardiac stents inserted, and experienced chest pain for many years.[14] On October 21, 2013, he visited his long-time cardiologist Thomas Molloy, M.D., for a follow-up on his coronary heart disease and chest pain.[15] Dr. Molloy diagnosed plaintiff with coronary artery disease, diabetes mellitus Type II, hypertension, hyperlipidemia, dysmetabolic syndrome X, obesity, shortness of breath, and angina.[16] Plaintiff visited Dr. Molloy again on December 4, 2013. At that visit, plaintiff reported his health issues improved since he was fired and he was worried his health would worsen if he returned to work.[17] He still experienced chest pains, though less frequently.[18] His stress echocardiogram tests in March 2010, February 2011, and March 2013 were normal with a resting ejection fraction of 60%.[19]

On January 15, 2014, plaintiff visited Dr. Shoshana Feiner, an internal medicine specialist, who prepared an Impairment Questionnaire and diagnosed Type II diabetes, metabolic syndrome, angina/CAD/hyperlipidemia, gastroesophageal reflux disease, and irritable bowel syndrome.[20] Dr. Feiner found that plaintiff could only sit for a total of two hours and walk/stand for three hours in an eight-hour workday.[21] Plaintiff also would need to move around every hour for at least five minutes.[22] In addition, his pain,

---

[14] D.I 6-8 at 297-98.
[15] *Id*. at 322.
[16] *Id*.
[17] *Id*. at 313.
[18] *Id*. at 308.
[19] D.I. 6-7 at 289, 295.
[20] D.I. 6-12 at 695.
[21] *Id*. at 697.
[22] *Id*. at 697-98.

3

fatigue, or other symptoms would periodically interfere with his attention and concentration.[23]

After visiting Dr. Feiner, plaintiff visited Dr. Molloy who completed a Cardiac Impairment Questionnaire.[24] Dr. Molloy diagnosed plaintiff with CAD with class III angina, as well as fatigue, shortness of breath, and weakness.[25] He stated plaintiff could sit for an hour and stand/walk for an hour in an eight-hour work day and could not lift even five pounds.[26] He further determined plaintiff's impairments and treatments could result in absences from work over three times per month, and his symptoms would frequently interfere with attention and concentration.[27] He opined that plaintiff is unable to perform any activity that requires physical activity or mental stress and did not expect plaintiff's situation to improve.[28]

Plaintiff routinely had normal physical examination findings during his physician's visits throughout the alleged disability period.[29] In August 2015, plaintiff was seen by Dr. Molloy and explained that he was not exercising or dieting as recommended because he had been caring for his wife who has Stage 4 Colon Cancer.[30] In December 2015, plaintiff underwent a cardiac catheterization because of his increasing cardiac symptoms and abnormal EKG.[31] Plaintiff stated that he no longer had

---

[23] *Id.* at 700.
[24] *Id.* at 704.
[25] *Id.*
[26] *Id.* at 706-07.
[27] *Id.* at 707.
[28] *Id.* at 710.
[29] D.I. 6-8 at 310-11; *Id.* at 320; D.I. 6-15 at 882-83.
[30] D.I. 6-15 at 894.
[31] D.I. 6-14 at 855.

4

shortness of breath and only had occasional chest pain.[32]

In addition, plaintiff suffers from reflex sympathetic dystrophy in his left foot which prevents him from standing or walking for an extended period of time.[33] From February to September 2014, he was treated by podiatrist, Jacob Reinkraut, D.P.M., to address foot pain.[34] He was diagnosed with diabetic neuropathy, pain syndrome/RSD, and elongated mycotic nails.[35] By April, his foot pain had lessened and Dr. Reinkraut recommended pain management, but plaintiff declined.[36]

Plaintiff was diagnosed with diabetes in 2009 and was treated by Michael Magnotti, M.D., an endocrinologist, for this condition since 2012.[37] Dr. Magnotti's findings have remained consistent with plaintiff having 5/5 muscle strength in his legs, no edema in his extremities, and grossly nonfocal neurological examinations.[38] On April 7, 2014, Dr. Magnotti completed a Diabetes Impairment Questionnaire.[39] He did not opine about plaintiff's ability to sit, stand, walk, or lift, his stress levels and ability to concentrate during an 8-hour work day, because Dr. Magnotti felt he was unable to assess these abilities.[40]

Plaintiff has also visited chiropractors for musculoskeletal pain.[41] Dr. Joseph

---

[32] Id.
[33] D.I. 6-12 at 725.
[34] D.I. 6-13 at 755-57.
[35] D.I. 6-12 at 722.
[36] D.I. 6-13 at 756.
[37] D.I. 6-12 at 671; Id. at 648-94.
[38] D.I. 6-13 at 732; Id. at 736-37; Id. at 740.
[39] D.I. 6-12 at 711-16.
[40] Id. at 714-15.
[41] See generally D.I. 6-10.

5

Scarpelli, D.C., a chiropractor, treated him for many years.[42] An MRI in 2008 revealed bilateral pars defect at L5 and a mild disc bulge at L4-5 with normal facet joints and no canal or foraminal stenosis.[43] A cervical MRI in 2010 showed that there was left-sided forminal stenosis at C5-6 and mild multilevel facet joint hypertrophy at C5-6, with no disc herniation.[44] On August, 12, 2013, Dr. Scarpelli signed an application for a disabled parking placard, stating plaintiff was severely limited in his ability to walk because of an arthritic, neurological, or orthopedic condition and could not walk two hundred feet without stopping to rest.[45]

Plaintiff also suffers from asthma.[46] In September 2013, he had mild restrictive ventilatory defects;[47] however, he has not related any asthma-related problems to his treatment providers.[48]

The state agency physicians performed two disability determination evaluations of plaintiff dated March 29, 2014 and August 21, 2014.[49] In their reports, these physicians considered the treating physician's opinions, and determined the following regarding plaintiff's limitations.[50] Plaintiff can occasionally lift/carry twenty-five pounds, frequently lift/carry ten pounds, stand/walk for a total of four hours, sit for a total of six hours, and push/pull an unlimited amount except when limited by the weight

---

[42] Id.
[43] Id. at 535.
[44] Id. at 536.
[45] Id. at 530.
[46] D.I. 6-9 at 489.
[47] Id. at 491-92.
[48] D.I. 6-11 at 549-694.
[49] See generally D.I. 6-3 at 97-108; see generally D.I. 6-3 at 110-19.
[50] See id. at 104.

lifted/carried.[51]

### B. Hearing Testimony

#### 1. Plaintiff's Testimony

At the administrative hearing on June 13, 2016, plaintiff testified about his background, work history, and alleged disability.[52] He was born on October 24, 1952.[53] He is approximately five-foot-ten inches tall and weighs about 238 pounds.[54] He has a high school education.[55] He is married and cares for his wife who has Stage 4 colon cancer.[56]

For almost 30 years, he worked for Mathias & Carr.[57] He started as a facilities manager, running the copy and print shops.[58] He later worked in customer service.[59] In November 2013, he was terminated because business was not doing well and he was not writing any business.[60] He has remained unemployed since then.[61] Although in 2014 earnings of $11,000 were reported on plaintiff's tax return under self-employment, this income was earned by his wife.[62]

After he was laid off, he was seen by his cardiologist, Dr. Molloy, his general

---

[51] *Id.*
[52] *See generally* D.I. 6-2.
[53] *Id.* at 55.
[54] *Id.*
[55] *Id.*
[56] *Id.* at 68.
[57] *Id.* at 55.
[58] *Id.*
[59] *Id.* at 55-56.
[60] *Id.* at 56.
[61] *Id.* at 57.
[62] *Id.*

practitioner, Dr. Feiner, and his foot doctor, Dr. Reinkraut.[63]  Their advice was, due to his poor health, plaintiff could not work.[64]  He has had six stents inserted, and suffers with angina, pains in his chest, COPD, asthma, musculoskeletal issues, and shortness of breath.[65]  He is relatively inactive, unable to climb stairs, and uses an inhaler daily.[66]  If he lifts heavier than five or ten pounds, he experiences pins and needles up his arm and pain radiating from his shoulder to his chest and sometimes into his back.[67]  In addition, he has reflex sympathetic dystrophy in his left foot which prevents him from standing or walking more than twenty minutes.[68]  He can only sit for a maximum of thirty minutes because of pain in his back and hips.[69]  He sees a chiropractor for his general pain.[70]  Plaintiff can only sleep in hour-and-a-half increments because of leg and foot pain.[71]  Moreover, his stomach issues have recently worsened.[72]

After experiencing recurring symptoms in the Fall 2015, he sought a cardiologist, Dr. Roger Colletti, who performed a coronary catheterization and angioplasty.[73]  Within two weeks thereafter, because of chest pain, another stent was inserted, which subsequently was required to be unblocked, but alleviated his chest pain.[74]  His various medications cause side effects such as dry mouth, bladder issues, and stomach

---

[63] *Id.* at 59.
[64] *Id.* at 58.
[65] *Id.* at 59-61.
[66] *Id.*
[67] *Id.*
[68] *Id.* at 62.
[69] *Id.* at 64.
[70] *Id.*
[71] *Id.* at 65.
[72] *Id.* at 67.
[73] *Id.* at 59.
[74] *Id.* at 60, 66.

8

problems.[75]

Because of his wife's illness, he makes their meals and does the grocery shopping; his grandchildren clean the house.[76] Both plaintiff and his wife do the laundry.[77] When bathing, he has a seat in the shower and wears slip-on shoes because he has difficulty bending down.[78] According to his testimony, no lifting was required while he was employed in customer service and internal selling.[79]

## 2. Vocational Expert's Testimony

During the hearing, vocational expert, Louie Schalosi, testified to plaintiff's background, skills, limitations, and jobs available within plaintiff's restrictions.[80] Schalosi characterized plaintiff's work as a customer service coordinator as a skilled light-exertion occupation.[81] Plaintiff's employment as an invoice control clerk is a composite occupation classified as sedentary exertion, however Schalosi considered it as light exertion since this job was performed in conjunction with the customer service coordinator position.[82]

The ALJ posed the following hypothetical individual of plaintiff's age, education, and work history who is capable of performing at the sedentary exertion level, can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds, occasionally can balance, stoop, kneel, crouch, and crawl, with occasional exposure to

[75] *Id.* at 70.
[76] *Id.* at 69.
[77] *Id.*
[78] *Id.*
[79] *Id.* at 72.
[80] *Id.* at 71-76.
[81] *Id.* at 73.
[82] *Id.*

9

extreme cold, extreme heat, humidity, vibration, fumes, odors, dust, gas, poor ventilation, and hazards.[83] In response, Schalosi testified that this individual could not perform plaintiff's previous work.[84]

The ALJ further inquired whether there are skills from plaintiff's previous employment that are transferable to positions at the sedentary level.[85] Schalosi testified that there are transferable skills such as handling inventory, executive thinking, and basic computer, sales, record keeping, and filing skills.[86] He then identified some of the sedentary occupations that utilized these skills. The sedentary occupations utilizing these skills include invoice control clerk, supervisor of order takers, and telephone solicitor. [87]

The ALJ posed a final hypothetical where the individual required frequent breaks beyond the regular breaks, specifically two additional, thirty minute breaks, and whether this would affect the individual's employability.[88] Schalosi responded because the added breaks would cause the individual to be off task by at least 10%, this would preclude the aforementioned occupations.[89]

Plaintiff's attorney posed a question using the same individual, but who was absent two to three times a month.[90] Schalosi testified that such absences would

---

[83] *Id.* at 74.
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.* at 74-75.
[88] *Id.* at 75.
[89] *Id.*
[90] *Id.* at 76.

10

typically preclude all employment.[91]

## C. The ALJ's Findings

Based on the medical evidence and testimony provided in the 2016 hearing, the

ALJ determined that plaintiff was not disabled and, therefore, ineligible for Social

Security Disability Insurance.[92] The ALJ's findings are summarized as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2.  The claimant has not engaged in substantial gainful activity since November 15, 2013, the alleged onset date (20 C.F.R. §404.1571 *et seq.*).

3.  The claimant has the following severe impairments: coronary artery disease, asthma, and obesity (20 C.F.R. § 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except he can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and can have only occasional exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dust, gases, poor ventilation, and hazards.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7.  The claimant was born on October 24, 1952, and was 61 years old, which is defined as an individual approaching retirement age, on the alleged disability onset date (20 C.F.R. § 404.1563).

8.  The claimant has at least a high school education and is able to

---

[91] *Id.*
[92] *See generally* D.I. 6-2.

11

communicate in English (20 C.F.R. § 404.1564).

9. The claimant has acquired work skills from past relevant work (20 C.F.R. § 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. §§ 404.1569, 404.1569(a) and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2013, through June 24, 2016, the date of this decision (20 C.F.R. § 404.1520)

## III. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Both parties moved for summary judgment.[93] In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[94] If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[95]

This standard does not change merely because there are cross-motions for summary judgment.[96] Cross-motions for summary judgment

are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not

---

[93] *See generally* D.I. 10 (Plaintiff's motion for summary judgment); *see generally* D.I. 14 (Defendant's motion for summary judgment).

[94] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[95] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).

[96] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

12

constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[97]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[98]

## B.    Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the district court. The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not include substantial evidence to support the ALJ's decision. The Commissioner's factual decisions are upheld if supported by substantial evidence.[99] Substantial evidence means less than a preponderance of the evidence, but more than a mere scintilla of evidence.[100] As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[101]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[102] The court's review is limited to the evidence that was actually presented to the ALJ.[103] The Third Circuit has explained that

---

[97] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[98] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[99] 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Medical Center v. Hecklem*, 806 F .2d 1185, 1190 (3d Cir. 1986).
[100] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).
[101] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[102] *Monsour*, 806 F.2d at 1190.
[103] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001)

13

a:

> single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by countervailing
> evidence. Nor is evidence substantial if it is overwhelmed by other evidence,
> particularly certain types of evidence (e.g., evidence offered by treating
> physicians) or if it really constitutes not evidence but mere conclusion.[104]

Thus, the inquiry is not whether the court would have made the same

determination, but rather, whether the Commissioner's conclusion was reasonable.[105]

Even if the court would have decided the case differently, it must defer to the ALJ and

affirm the Commissioner's decision so long as that decision is supported by substantial

evidence.[106]

Where "review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the

agency in making its decision."[107] In *Securities & Exchange Commission v. Chenery*

*Corp.*,[108] the Supreme Court found that a "reviewing court, in dealing with a

determination or judgment which an administrative agency alone is authorized to make,

must judge the propriety of such action solely by the grounds invoked by the agency. If

those grounds are inadequate or improper, the court is powerless to affirm the

administrative action by substituting what it considers to be a more adequate or proper

basis."[109] The Third Circuit has recognized the applicability of this finding in the Social

---

[104] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

[105] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

[106] *Monsour*, 806 F .2d at 1190-91.

[107] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).

[108] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

[109] *Id.*

14

Security disability context.[110]  Thus, this court's review is limited to the four corners of

the ALJ's decision.[111]

### C.    ALJ's Disability Determination Standard

The Supplemental Social Security Income (SSI) program was enacted in 1972 to

assist "individuals who have attained the age of 65 or are blind or disabled" by setting a

minimum income level for qualified individuals.[112]  A claimant – in order to establish SSI

eligibility – bears the burden of proving that he is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of or not less than twelve months."[113]  Moreover, "the physical or

mental impairment or impairments must be of such severity that the claimant is not only

unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in

significant numbers in the national economy."[114]  Furthermore, a "physical or mental

impairment" is an impairment that results from anatomical, physiological, or

psychological abnormalities which are evidenced by medically acceptable clinical and

laboratory diagnostic techniques.[115]

_____

[110] *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001).
[111] *Cefalu v. Barnhart*, 387 F. Supp.2d 486, 491 (W.D. Pa. 2005).
[112] *See Sullivan v. Zebley*, 493 U.S. 521, 524 (1990) (citing 42 U.S.C. § 1381 (1982 ed.)).
[113] 42 U.S.C. § 423(d)(1)(A).
[114] 42 U.S.C. § 423(d)(2)(A).
[115] 42 U.S.C. § 423(d)(3).

15

## 1.    Five-Step Test.

The Social Security Administration uses a five-step sequential claim evaluation

process to determine whether an individual is disabled.[116]

> In step one, the Commissioner must determine whether the
> claimant is currently engaging in substantial gainful activity.  If a claimant
> is found to be engaged in substantial activity, the disability claim will be
> denied.
> In step two, the Commissioner must determine whether the
> claimant is suffering from a severe impairment.  If the claimant fails to
> show that her impairments are "severe", she is ineligible for disability benefits.
> In step three, the Commissioner compares the medical evidence of the
> claimant's impairment to a list of impairments presumed severe enough to
> preclude any gainful work.  If a claimant does not suffer from a listed
> impairment or its equivalent, the analysis proceeds to steps four and five.
> Step four requires the ALJ to consider whether the claimant retains the
> residual functional capacity to perform her past relevant work.  The
> claimant bears the burden of demonstrating an inability to return to her
> past relevant work.  If the claimant is unable to resume her former
> occupation, the evaluation moves to the final step.

> At this stage, the burden of production shifts to the Commissioner,
> who must demonstrate the claimant is capable of performing other
> available work in order to deny a claim of disability.  The ALJ must show
> there are other jobs existing in significant numbers in the national
> economy which the claimant can perform, consistent with her medical
> impairments, age, education, past work experience, and residual
> functional capacity.  The ALJ must analyze the cumulative effect of all the
> claimant's impairments in determining whether she is capable of
> performing work and is not disabled.  The ALJ will often seek the
> assistance of a vocational expert at this fifth step.[117]

If the ALJ determines that a claimant is disabled at any step in the sequence, the

analysis stops.[118]

---

[116] *See* 20 C.F.R. §416.920(a); *see also Plummer v. Apfel*, 186 F.3d 422 (3d Cir.
1999).
[117] *Plummer*, 186 F.3d at 427.
[118] *See* 20 C.F.R § 404.1520(a)

## 2. Weight Given to Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."[119] Moreover, such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on record.[120]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[121] If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence."[122] If an opinion is rejected, then the ALJ must provide an explanation "of the reason why probative evidence has been rejected" so a "reviewing court can determine whether the reasons for rejection were improper."[123] However, the explanation need not be exhaustive, but rather "in most cases, a sentence or short paragraph would probably suffice."[124]

However, a statement by a treating source that a claimant is "disabled" is not a medical opinion: rather, it is an opinion on an issue reserved to the ALJ because it is a

---

[119] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)

[120] *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).

[121] *Morales v. Apfel*, 225 F.3d 310, 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

[122] *Plummer*, 186 F.3d at 429.

[123] *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981).

[124] *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

finding that is dispositive of the case.[125]  Therefore, only the ALJ can make a disability
determination.

### 3.    Evaluation of Subjective Accounts of Pain[126]

Statements about the symptoms[127] alone never establish the existence of any
impairment or disability.  The Social Security Administration uses a two-step process to
evaluate existence and severity of symptoms.

### 4.    Existence of Pain

First, the ALJ must find a medically determinable impairment – proven with
medically acceptable clinical and laboratory diagnostic data – that could reasonably be
expected to produce the claimant's symptoms.  Otherwise, the ALJ cannot find the
applicant disabled, no matter how genuine the symptoms appear to be.

This step does not consider the intensity, persistence and limiting effects of the
symptoms on the claimant:  it only verifies whether a medical condition exists that could
objectively cause the existence of the symptom.

Analysis stops at this step where the objectively determinable impairment meets
or medically equals one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, because
the claimant is considered disabled *per se.*

---

[125] *See* 20 C.F.R. § 416.927 (e)(1).

[126] *See* 20 C.F.R §§ 416.928-29. *See also* SSR 96-7p.

[127] A symptom is an individual's own description of physical or mental
impairments such as pain, fatigue, shortness of breath and other complaints.  *See* SSR
96-7p.

18

### 5. Severity of Pain

At step two, the ALJ must determine the extent to which the symptoms limit the claimant's ability to do basic work activities, which requires determining the applicant's credibility.[128]

At this step, the ALJ must consider the entire record, including medical signs, laboratory findings, the claimant's statements about symptoms, any other information provided by treating or examining physicians and psychologists, and any other relevant evidence in the record, such as the claimant's account of how the symptoms affect his activities of daily living and ability to work.[129]

Where more information is needed to assess a claimant's credibility, the ALJ must make every reasonable effort to obtain available information that would shed light on that issue. Therefore, the ALJ must consider the following factors relevant to symptoms, only when such additional information is needed:

(i) The applicants' account of daily activities;

(ii) The location, duration, frequency, and intensity of pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms;

(v) Treatment, other than medication, the applicant receives or has received for

_____

[128] Credibility is the extent to which the statements can be believed and accepted as true.

[129] *See* 20 C.F.R. § 404.1529.

relief of pain or other symptoms;

(vi)  Any measures the applicant uses or has used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning functional limitations and restrictions due to pain or other symptoms.[130]

### 6.  Factors in Evaluating Credibility[131]

A claimant's statements and reports from medical sources and other persons with regard to the seven factors, noted above, along with any other relevant information in the record, provide the ALJ with an overview of the subjective complaints, and are elements to the determination of credibility.

Consistency with the record, particularly medical findings, supports a claimant's credibility.  Since the effects of symptoms can often be clinically observed, when present, they tend to lend credibility to a claimant's allegations.  Therefore, the adjudicator should review and consider any available objective medical evidence concerning the intensity and persistence of pain or other symptoms in evaluating the claimant's statements.

Persistent attempts to obtain pain relief, increasing medications, trials of different types of treatment, referrals to specialists, or changing treatment sources may indicate that the symptoms are a source of distress and generally support a claimant's

---

[130] *See* 20 C.F.R. § 404.1529
[131] *See* SSR 16-3p.

20

allegations. An applicant's claims, however, may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show noncompliance with prescribed treatment.

Findings of fact by state agency medical and psychological consultants and other physicians and psychologists regarding the existence and severity of impairments and symptoms, and opinions of non-examining physicians and psychologist are also part of the analysis. Such opinions are not given controlling weight. However, the ALJ, although not bound by such findings, may not ignore them and must explain the weight afforded those opinions in his decision.

Credibility is one element in determining disability. The ALJ must apply his finding on credibility in step two of the five-step disability determination process, and may use it at each subsequent step.

The decision must clearly explain – provide sufficiently specific reasons based on the record – to the claimant and any subsequent reviewers, the weight afforded to the claimant's statements and the reasons therefore.

The law recognizes that the claimant's work history should be considered when evaluating the credibility of his testimony or statements.[132] A claimant's testimony is accorded substantial credibility when he has a long work history, which demonstrates it is unlikely that, absent pain, he would have ended employment.[133]

---

[132] *See* 20 C.F.R. § 404.1529(a)(3)

[133] *See Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981). In *Podedworny*, the claimant worked for thirty-two years as a crane operator for one company. He had a ninth grade education

### 7. Medical Expert Testimony

The onset date of disability is determined from the medical records and reports and other similar evidence, which requires the ALJ to apply informed judgment.[134] "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."[135]

## IV. DISCUSSION

### A. Parties' Contentions

Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine his physical residual functional capacity.[136] He contends the ALJ failed to follow the Commissioner's Regulations which provide that if a treating source's opinion is well-supported by medically accepted techniques and not inconsistent with other evidence, then the Commissioner will give it controlling weight.[137] Moreover, the ALJ may only afford the opinion no weight if the ALJ considers certain factors including the opining sources' examining relationship, treatment relationship, supportability, consistency, and specialization.[138]

Plaintiff also contends the ALJ failed to properly evaluate his testimony.[139] He claims the ALJ failed to give great weight to his testimony despite the supporting

and left his employment after the company physicians determined that his symptoms of dizziness and blurred vision prevented him from safely performing his job.
[134] See SSR 83-20.
[135] Id.
[136] D.I. 11 at 12.
[137] Id.
[138] Id. at 13.
[139] Id. at 17.

22

medical evidence.[140]  Plaintiff argues the ALJ erred by finding him not credible because he is able to engage in some activities of daily living and he ignored recommendations to try to lose weight.[141]  Thus, plaintiff maintains the ALJ's decision should be reversed or remanded.[142]

Alternatively, defendant contends the ALJ properly evaluated the medical opinion evidence and substantial evidence supports his analysis.[143]  The ALJ is not required to uncritically accept any medical opinion, but must evaluate the applicable level of controlling weight.[144]  Here, the ALJ considered the medical evidence, explained the weight afforded to each opinion, and provided reasons found in the record to support his conclusions.[145]

In addition, defendant argues there is substantial evidence in support of the ALJ's finding that plaintiff's subjective statements were not fully consistent with the record.[146]  Defendant posits the ALJ properly and carefully considered plaintiff's testimony, articulated his reasons for finding plaintiff's statements were only partially supported, and identified with specificity the evidence which supported his conclusion.[147]  Therefore, defendant maintains there is no reversible error in the ALJ's analysis and plaintiff is attempting to re-weigh the evidence.[148]

---

[140] *Id*. at 17-18.
[141] *Id*. at 18.
[142] *Id*. at 20.
[143] D.I. 15 at 9.
[144] *Id*.
[145] *Id*.
[146] *Id*. at 14.
[147] *Id*. at 14-15.
[148] *Id*. at 16.

## B. Disability Analysis

Title II of the Social Security Act, 42 U.S.C. § 423(a)(I)(D), "provides for the payment of insurance benefits" to those who contributed to the program and suffer from a physical or mental disability.[149] In order to qualify for DIB, a claimant must establish that he was disabled prior to the date he was last insured.[150] A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[151] To be disabled, the severity of the impairment must prevent return to previous work, and considering age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[152]

As addressed previously, in determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[153] Should a finding of disability or non-disability be made at any point in the sequential process, the Commissioner will not review the claim further.[154]

However, where claimant's impairment or its equivalent matches an impairment in the list of impairments (the "listings") severe enough to preclude any gainful work, the

---

[149] Bowen, 482 U.S. at 140.
[150] 20 C.F.R. § 404.131.
[151] 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).
[152] 42 U.S.C. § 423(d)(2)(A); Barnhart v. Thomas, 540 U.S. 20, 21-22 (2003).
[153] 20 C.F.R. § 404.1520; see also Plummer v. Apfel, 186 F.3d 422,427-28 (3d Cir. 1999).
[154] 20 C.F.R. § 404.1520(a)(4).

claimant is presumed disabled.[155] If not, then the analysis continues to steps four and

five.[156] At step four, the Commissioner determines whether the claimant retains the

RFC to perform his past relevant work.[157] A claimant's RFC is "that which an individual

is still able to do despite the limitations caused by [his] impairment(s)."[158] "The claimant

bears the burden of demonstrating an inability to return to [his] past relevant work."[159]

Step five requires the Commissioner to determine whether the claimant's

impairments preclude adjusting to any other available work.[160] The burden rests with

the Commissioner to show the claimant is capable of performing other available work

existing in significant national numbers and consistent with the claimant's medical

impairments, age, education, past work experience, and RFC before denying disability

benefits.[161]

### 1. Weight Accorded to Medical Opinion Evidence

It is the exclusive responsibility of the ALJ to weigh the evidence in the record as

a whole in making a disability determination, a residual functional capacity finding, or

any other issue reserved to the Commissioner.[162] The evidence presented to the ALJ

may contain differing medical opinions from both treating and non-treating physicians,

---

[155] 20 C.F.R. § 404.1520(a)(4)(iii).
[156] 20 C.F.R. § 404.1520(e).
[157] 20 C.F.R.. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428.
[158] *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).
[159] *Plummer*, 186 F.3d at 428.
[160] 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.
[161] *Id*.
[162] *See* 20 C.F.R. § 404.1527(d)(1); *see also* 20 C.F.R. § 404.1527(d)(2).

as well as other testimony.[163] Normally, the treating physician's evidence is given controlling weight because this physician is usually most acquainted with the claimant's medical history.[164]

However, when the treating physician's opinion is not consistent with the record as a whole or is not well supported by "medically acceptable clinical and laboratory diagnostic techniques," an ALJ may reasonably accord little weight to the treating physician's opinion.[165] When the treating physician's opinion is not afforded controlling weight, the ALJ applies various factors to determine the opinion's weight, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, as well as other factors that are brought to the ALJ's attention.[166] If an opinion is rejected, then the ALJ must provide an explanation "of the reason why probative evidence has been rejected" so a "reviewing court can determine whether the reasons for rejection were improper."[167] However, the explanation need not be exhaustive, but rather "in most cases, a sentence or short paragraph would probably suffice."[168] Opinions from examining sources generally are given more weight than ones from non-examining sources.[169]

---

[163] *See* 20 C.F.R. § 404.1513.
[164] *See* 20 C.F.R. § 404.1527(c).
[165] *See* 20 C.F.R. § 404.1527(c)(2).
[166] *See* 20 C.F.R. §§ 404.1527(c)(2)(i-ii)-(c)(6).
[167] *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981).
[168] *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).
[169] 20 C.F.R. § 404.1527(c)(1).

26

### a. Dr. Feiner

The ALJ applied no weight to Dr. Feiner's opinion on plaintiff's ability to sit, stand, and walk because of the absence of any objective medical evidence in support.[170] Dr. Feiner's treatment notes document no difficulty in plaintiff's ability to sit, stand, or walk and plaintiff had normal physical examination findings.[171] The ALJ attributed some weight to the determination that plaintiff can lift up to 20 pounds, but, due to his subjective complaints, the ALJ limited plaintiff to a sedentary level of lifting.[172] Therefore, the ALJ reasonably concluded Dr. Feiner's opinion in the multiple impairment questionnaire from January 2014 should be given no weight because of lack of support and inconsistency with the record.

### b. Dr. Molloy

The ALJ assigned no weight to Dr. Molloy's opinions in a cardiac impairment questionnaire from March 2014 on plaintiff's ability to sit, walk, stand, concentrate, and handle stress.[173] Dr. Molloy's notes from January 2014 did not mention any physical restrictions, and affirmatively stated that plaintiff had no malaise or edema and had a normal heart rate and rhythm.[174] Thus, Dr. Molloy's treatment records are inconsistent with his opinions in the questionnaire. As a result, the ALJ concluded that there is no evidence on the record as a whole to support Dr. Molloy's opinion regarding plaintiff's ability to work, pay attention, or concentrate, and reasonably assigned no weight to Dr.

---

[170] D.I. 6-2 at 39.
[171] Id.
[172] Id.
[173] Id. at 40.
[174] D.I. 6-13 at 791-92.

27

Molloy's opinions in the questionnaire because of lack of support and inconsistency with the record.[175]

### c. Dr. Reinkraut

The ALJ offered no weight to Dr. Reinkraut's opinions in a lower extremities questionnaire from May 2014, which opined on plaintiff's ability to sit, stand, and walk and ability to concentrate.[176] The ALJ determined that Dr. Reinkraut, a podiatrist, opined outside the scope of his expertise, especially regarding plaintiff's functional limitations and diabetic neuropathy.[177] Moreover, Dr. Reinkraut's notes provided no evidence to support the limitations and recommendations indicated.[178] Rather, his notes only show that plaintiff had +1 edema in his legs, normal muscle strength, and decreased protective sensation in both feet.[179] Therefore, the ALJ reasonably determined that no weight be given to Dr.Reinkraut's opinion because of lack of support, inconsistency with his findings, and outside his specialization.

### d. Dr. Coletti

The ALJ assigned no weight to Dr. Coletti's opinions in a cardiac impairment questionnaire except for the statement that plaintiff's diagnoses and limitations would last at least 12 months.[180] Dr. Coletti determined that he could not assess functional limitations and did not know the effect of the symptoms on attention and

---

[175] D.I. 6-2 at 40.
[176] Id.
[177] Id.
[178] Id.
[179] D.I. 6-12 at 720.
[180] D.I. 6-2 at 40.

28

concentration.[181] Thus, the ALJ reasonably concluded no weight be afforded to Dr. Colletti's opinion because he had only recently became plaintiff's cardiologist and did not, in fact, provide an opinion concerning plaintiff's functional limitations.

### e. Dr. Magnotti

The ALJ gave significant weight to Dr. Magnotti's opinions in a diabetes mellitus impairment questionnaire from April 2014.[182] Dr. Magnotti determined that plaintiff had no clinical findings or symptoms associated with his diabetes and no vascular or neuropathic complications.[183] He provided no opinion on plaintiff's functional capacity.[184] The ALJ found that this information was consistent with the other evidence on the record.[185] Thus, the ALJ reasonably assigned significant weight to the opinion because of consistency, support in the medical record, and the specialization of the doctor.

### f. State Agency Physical Assessment

The ALJ afforded "significant some weight" [sic][186] to the state agency's disability determination evaluations regarding plaintiff's ability to lift twenty-five pounds occasionally, ten pounds frequently, and stand/walk for four hours and sit for six

---

[181] *Id.*
[182] *Id.*
[183] D.I. 6-12 at 711-16.
[184] *Id.* at 714-15.
[185] D.I. 6-2 at 40.
[186] Although this language appears in the ALJ's decision, based on his conclusion regarding the state agency physicians' assessment, it seems the ALJ afforded some weight to their findings.

29

hours.[187]  The ALJ also noted that the environmental limitations were consistent with the record.[188]  However, he recognized that these findings were made before evidence was received at the hearing level, which included plaintiff's testimony.[189]  As a result, the ALJ concluded that the hearing evidence supported "greater exertional limitations" and postural restrictions than were found by the state agency physicians.[190]  While a non-examining and non-treating physician's opinion generally is accorded less weight than an examining and treating physician, the opinion must still be evaluated consistent with the various factors.  Thus, the ALJ reasonably afforded some weight to the disability determination evaluations.

### 2.    The ALJ's RFC Finding

Plaintiff argues that the evidence on record does not support the ALJ's RFC assessment.[191]  An RFC assesses an individual's ability to perform in a work setting despite impairments and limitations.[192]  Although the ALJ may weigh the credibility of the evidence, he must provide some indication of the evidence which he rejects and his reasons for discounting such evidence.[193]  This court finds that the ALJ properly applied the standards under the Agency Regulations and that substantial evidence supports the his decision.

---

[187] *Id*. at 41
[188] *Id*.
[189] *Id*.
[190] *Id*.
[191] D.I. 11 at 17.
[192] 20 C.F.R. § 404.1545.
[193] *See Plummer v. Apfel*, 186 F.3d 422, 429. (3d Cir. 1999).

### a. The ALJ Properly Evaluated Medical Opinions

Plaintiff claims the ALJ failed to properly weigh the medical opinion evidence because he did not assign the treating physicians' opinions controlling weight.[194] The ALJ has a duty to evaluate medical opinions.[195] For an opinion to have controlling weight, it must be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" on the record.[196] When it is determined not to have controlling weight, the ALJ evaluates the opinion according to regulatory factors.[197] If the ALJ finds that the opinion conflicts with the record, the ALJ may decide to not assign it significant weight.[198]

Here, the ALJ found that plaintiff's treating physicians' opinions did not merit controlling weight because "they are not well supported by medically acceptable clinical and laboratory techniques and are inconsistent with the other substantial evidence on the record."[199] The ALJ explained the weight afforded to each opinion and the reasons for that decision.[200] In determining weight, the ALJ applied the required factors and provided explanations as to why the particular opinion did not satisfy the factors.[201] Thus, the ALJ reasonably evaluated the treating physicians' opinions and substantial evidence supported his conclusions.

---

[194] See D.I. 11 at 12.

[195] 20 C.F.R. § 404.1527.

[196] 20 C.F.R. § 404.1527(c)(2).

[197] 20 C.F.R. §§ 404.1526(c)(2)(i-ii)-(c)(6).

[198] See Plummer, 186 F.3d at 429.

[199] D.I. 6-2 at 39.

[200] For the evaluations of each opinion see supra notes 173-98 and accompanying text.

[201] See id.

**b.    The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff maintains that substantial evidence does not support the ALJ's credibility determination of his testimony.[202] In determining RFC, the ALJ considers whether plaintiff's self-reported symptoms can "reasonably be accepted as consistent with the objective medical evidence and other evidence."[203] In evaluating subjective statements, the ALJ considers whether there is an impairment that could reasonably cause the individual's symptoms.[204] Then, he evaluates the "intensity, persistence, and limiting effects of the individual's symptoms" to decide the restrictions on the individual's ability to perform basic activities.[205] In evaluating credibility, consistency with the record and work history are important factors.[206] A claimant's testimony is afforded substantial credibility when he has a long work history, which highlights that, absent pain, he would not have ended employment.[207] In addition, the ALJ must provide in his decision "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated."[208]

The ALJ determined that while plaintiff's impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical

_____

[202] D.I. 11 at 18.

[203] 20 C.F.R. § 404.1529(a).

[204] See SSR 16-3p.

[205] See id.

[206] See 20 C.F.R. § 404.1529(a)(3).

[207] See *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981).

[208] SSR 16-3p at 26.

32

and record evidence.[209] The ALJ noted the record evidence supporting his conclusion includes that plaintiff has not been diagnosed with impairments related to neck, back, or joint pain.[210] Moreover, plaintiff was able to drive four hours from southern Delaware to New Jersey for podiatrist visits, despite some pain, and has cared for his ill wife during the alleged disability period.[211] Further, despite plaintiff's extensive work history, his employment ended because of a lay-off, indicating that he may have stopped working for reasons other than his impairments.[212] Thus, the ALJ reasonably evaluated plaintiff's subjective statements and substantial evidence supported his conclusion.

## V. CONCLUSION

For the foregoing reasons, I recommend that:

(1) Plaintiff's motion for summary judgment (D.I. 10) be denied; and

(2) Defendant's motion for summary judgment (D.I. 14) be granted.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

---

[209] D.I. 6-2 at 37.
[210] *Id.* at 38.
[211] *Id.* at 38-39.
[212] *Id* at 39.

33

Date: September 7, 2017

_____
Chief U.S. Magistrate Judge